# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MAINE

Kaija Fellman Lopez,
Plaintiff,

v.

Maine Department of Health and Human Services (DHHS),
Kathryn Whitehead, individually and in her official capacity,
and
Lynne Therriault, individually and in her official capacity,
Defendants.

Case No. _____

**COMPLAINT**
(for Violation of Civil Rights under 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act)

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

2. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to these claims occurred in Maine and Defendants reside or operate here.

## II. PARTIES

1. Plaintiff, Kaija Fellman Lopez, is a resident of Cumberland, Maine.

2. Defendant, Maine Department of Health and Human Services (DHHS), is a state agency receiving federal funding and providing services under color of state law.

3. Defendant, Kathryn Whitehead, is a DHHS caseworker. She is sued in her individual capacity for damages and in her official capacity for injunctive relief.

4. Defendant, Lynne Therriault, is a DHHS caseworker. She is sued in her individual capacity for damages and in her official capacity for injunctive relief.

## III. FACTUAL BACKGROUND

1. On October 20, 2024, Plaintiff voluntarily entered a detoxification program to address her health. While sedated with prescribed Valium, Defendants Whitehead and Therriault, in the presence of a Pine Tree clinician named Anna, coerced Plaintiff into signing a temporary guardianship form transferring custody of her children to her brother. Plaintiff was threatened with permanent state removal of her children unless she entered residential treatment at the facility designated by the detoxification unit staff. She was told she could not consult her personal physician or therapist or present alternative treatment options, and that failure to comply would result in loss of her children. This conduct deprived Plaintiff of her clearly established due process right to family integrity and medical decision-making.

2. Plaintiff entered residential treatment at the Plymouth House and a subsequent partial hospitalization program. During this period, Defendants failed to respond to repeated communication attempts by Plaintiff, her treatment team, and her brother, only returning calls after intervention by the facility's clinical director.

3. Plaintiff fully complied with all clinical recommendations. Nonetheless, Defendants berated her for allegedly "refusing to enter sober living," relying on unverified statements from her sister-in-law rather than medical professionals. This reliance constituted:
- a violation of Plaintiff's privacy rights under HIPAA and state law,
- disability discrimination based on stigma against Substance Use Disorder, and
- retaliation for Plaintiff's self-advocacy.

4. On December 14, 2024, shortly before discharge, Plaintiff was told in front of her treatment team member, Natasha, that her case would be closed. The next day, Defendants rescinded this closure, demanded further documentation, and threatened custody loss, despite Plaintiff's compliance.

5. After discharge, Plaintiff again faced non-responsiveness and was forced to escalate to DHHS supervisors, directors, the Child Welfare Ombudsman, law enforcement, the District Court, and the Governor's office.

6. When Defendants convened a family meeting, they berated Plaintiff, accused her of lying, threatened custody loss, and demanded that her personal therapist release confidential treatment notes and provide parenting recommendations. Plaintiff's therapist refused, citing HIPAA and ethical obligations. Despite this refusal, Defendants persisted, stating they had obtained such records from other providers in past cases, and even quoted Plaintiff's private therapeutic conversations to their supervisor — conduct that demonstrates both improper use of protected information and retaliatory intent.

7. On January 1, 2025, Plaintiff's children were returned to her care, confirmed in a DHHS email to her brother. Plaintiff never received official notice of case closure.

8. Shortly after reunification, Defendants issued substantiated findings of "severe abuse and neglect" that:
- had not been raised before reunification,
- were issued in retaliation for Plaintiff's complaints to oversight agencies, and
- were unsupported, as shown when overturned in full on appeal.

9. Defendants mailed the substantiation letter to the wrong address, delaying Plaintiff's notice until April 2025, depriving her of a timely defense.

10. Plaintiff filed a civil suit and FOAA request. The suit was dismissed on immunity grounds and the FOAA request denied as confidential.

11. Plaintiff's case was never subject to timely or proper judicial review, making reunification efforts convoluted and subjective, recourse for case mishandling difficult, and adherence to lawful procedures nearly impossible.

12. As a direct result, Plaintiff suffered loss of custody, discrimination based on disability, retaliation for protected speech, serious damage to her family structure and the emotional wellbeing of her children, and severe emotional, financial, and reputational harm.

## IV. CLAIMS FOR RELIEF

Count I – Fourteenth Amendment Due Process (42 U.S.C. § 1983)
- Defendants coerced Plaintiff into guardianship while medicated, denied her opportunity to be heard, and retaliated with false findings.
- The right to family integrity is clearly established (Hatch v. DCYF, 274 F.3d 12 (1st Cir. 2001)).

Count II – First Amendment Retaliation (42 U.S.C. § 1983)
- Defendants retaliated against Plaintiff for complaints to supervisors, the Ombudsman, and public officials by issuing false abuse findings.
- Retaliation for protected speech is a clearly established violation (Jordan v. Carter, 428 F.3d 67 (1st Cir. 2005)).

Count III – Disability Discrimination (ADA Title II)
- DHHS, through its agents, denied Plaintiff access to services and subjected her to adverse treatment based on her Substance Use Disorder, a disability recognized under 42 U.S.C. § 12102 and protected under the ADA.
- Threatening custody loss unless she entered specific treatment constituted unlawful disability discrimination.

Count IV – Violation of Rehabilitation Act (§ 504)
- DHHS receives federal financial assistance, waiving immunity to § 504 claims.
- Plaintiff was denied equal access to services and discriminated against based on disability, in violation of 29 U.S.C. § 794.

Count V – Negligence / Gross Negligence
- Defendants failed to communicate, mishandled case information, mailed findings to the wrong address, and violated statutory duties.
- Defendants' actions fell below the standard of care owed by state caseworkers, creating foreseeable harm to Plaintiff and her children.

## V. DAMAGES

1. As a direct and proximate result of Defendants' actions, Plaintiff suffered:
- Out-of-pocket costs for coerced treatment (residential, partial hospitalization, related medical expenses);
- Lost wages during coerced treatment and separation;
- Emotional distress and psychological harm;
- Reputational harm and stigma;
- Other financial losses including appeals and legal costs.

2. Plaintiff seeks:
- Compensatory damages of $1,300,000;
- Punitive damages of $3,000,000 against individual defendants;
- Injunctive and declaratory relief against DHHS to cease discriminatory and retaliatory practices.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:
A. Enter judgment in her favor;
B. Award compensatory damages of $1,300,000;
C. Award punitive damages of $3,000,000 against individual defendants;
D. Grant injunctive and declaratory relief requiring DHHS to:
- Train staff on ADA and § 504 compliance;
- Prohibit reliance on non-clinical or unauthorized sources of information;
- Ensure due process safeguards in child protection and custody cases;
- Prohibit coercive custody threats tied to medical or treatment compliance;
E. Award costs and reasonable attorney's fees under 42 U.S.C. § 1988;
F. Grant such further relief as this Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: 9/8/25

Kaija Fellman Lopez
184 Lower Main Street, #5
Freeport, ME 04032
(207) 671-1115
Kaijalopez8@gmail.com