UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| KAIJA FELLMAN LOPEZ, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:25-cv-00456-SDN |
| | ) | |
| MAINE DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION AFTER REVIEW OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

In her original complaint, Plaintiff alleged that the Maine Department of Health and Human Services (DHHS) and two of its employees violated her constitutional rights regarding an investigation of child abuse or neglect. (Complaint, ECF No. 1.) With her complaint, Plaintiff filed an application to proceed without prepayment of fees, (Application, ECF No. 3), which application the Court granted. (Order, ECF No. 5.) In accordance with the statute governing actions filed without the prepayment of fees, 28 U.S.C. § 1915(e)(2), I conducted a preliminary review of Plaintiff's complaint and recommended dismissal. (First Recommended Decision, ECF No. 6.) Plaintiff objected to the first recommended decision and amended her pleading. (Objection, ECF No. 7; First Amended Complaint, ECF No. 10.) I withdrew the first recommended decision, conducted a preliminary review of the new pleading, and recommended dismissal of the first amended complaint. (Second Recommended Decision, ECF No. 11.) Plaintiff again objected to the recommended decision and moved to amend her complaint, which motion the Court

granted. (Objection and Motion to Amend, ECF No. 12; Order, ECF No. 13.) Plaintiff then filed another amended pleading. (Second Amended Complaint, ECF No. 14.)

Because Plaintiff has filed a second amended complaint, I withdraw the second recommended decision as moot and conduct a preliminary review of the operative pleading. Following a review of Plaintiff's second amended complaint, I recommend the Court dismiss the case.

## FACTUAL ALLEGATIONS

Plaintiff is resident of Maine and a single mother of two children. (Second Amended Complaint ¶¶ 1, 10.) On October 16, 2024, a daycare provider for one of Plaintiff's children called Plaintiff's brother (who was listed as an emergency contact) because Plaintiff had not arrived for pickup. (Attachment at 8, ECF No. 14-2.) DHHS employees began investigating the possibility of child abuse or neglect. (*Id.*)[1] On October 20, 2024, Plaintiff voluntarily entered a detoxification treatment program at Pine Tree Recovery Center for alcohol use disorder. (Second Amended Complaint ¶¶ 1, 2, 14.) Plaintiff executed a temporary guardianship arrangement with her brother to care for her children while she was in recovery. (*Id.* ¶ 16.)

---

[1] Plaintiff did not mention or allege any details about the incident or the initial period of the investigation, but she provided several attachments with hundreds of pages of emails, text messages, letters, and medical records, many of which contain information about the initial incident, including some of Plaintiff's communications describing the incident in a manner consistent with the statement above. Although the Court has no duty to search though such voluminous attachments, and although that pleading approach is generally impermissible, I have included here some prominent information from the documents where necessary to understand the allegations in the second amended complaint. Because Plaintiff might dispute some of the assertions by other individuals within the records she provided, I have described the incident at the highest level of generality and have only considered those aspects of the attachments that are evidently undisputed.

On October 26, 2024, Plaintiff was discharged from the detox program at Pine Tree Recovery Center and was referred to a residential treatment program at The Plymouth House. (*Id.* ¶ 17; Attachment at 1, 66, 79, ECF No. 14-3.) Defendants remained involved with Plaintiff's efforts to complete treatment and reunite with her children, and Plaintiff consistently expressed the desire to reunite with her children. (Second Amended Complaint ¶¶ 17–18.) Plaintiff repeatedly told her treatment providers that she experienced significant anxiety about the investigation and whether information she provided during treatment would be used against her in child protective proceedings. (*Id.* ¶ 23.) According to Plaintiff, there were periods of unspecified duration "during which Plaintiff, her family members, and treatment providers were unable to obtain meaningful responses from DHHS despite repeated efforts to do so." (*Id.* ¶ 22.)

Shortly before discharge from The Plymouth House, Plaintiff was informed that the DHHS investigation was expected to be closed upon receipt of documentation confirming successful completion of treatment. (*Id.* ¶ 32–33.) On December 13, 2024, Plaintiff was discharged from the residential treatment program at The Plymouth House with a recommendation for further intensive outpatient treatment. (*Id.* ¶¶ 30, 35.) Other family members were the primary proponents of a sober living program after discharge, which program Defendants evidently favored, and Plaintiff evidently opposed, but a sober living program was not a clinical recommendation. (*Id.* ¶¶ 26–29.)

After completion of the inpatient treatment program, Defendants continued requesting additional information and imposing additional conditions that impacted reunification, including parenting recommendations and demands for therapy-related

information. (*Id.* ¶¶ 37–40.) Beginning in late December 2024, Plaintiff repeatedly sought assistance, clarification, and review of DHHS actions and submitted complaints to DHHS supervisors and administrators regarding Defendants' communication failures, treatment-related demands, and the handling of her case. (*Id.* ¶¶ 41–43.)[2] On January 1, 2025, Plaintiff's children were returned to her care. (*Id.* ¶ 36.)

On January 30, 2025, Defendants issued a notice letter to Plaintiff with a "substantiation" finding of neglect. (*Id.* ¶ 45; Attachment at 6–13, ECF No. 14-2.)[3] Defendants did not initiate judicial proceedings regarding Plaintiff or her children. (Second Amended Complaint ¶ 54.) Because the notice was sent to an address for a property that Plaintiff had vacated in a recent move, Plaintiff did not receive the letter until April 2025. (*Id.* ¶¶ 47–50.) When Plaintiff learned of the letter, she appealed promptly. (*Id.* ¶ 51.) In May 2025, the appeal team at DHHS overturned the substantiation finding, concluding that there was insufficient information in the case record to support the finding. (*Id.* ¶¶ 52–53; Attachment at 1, ECF No. 14-2.)

[2] Plaintiff did not allege when she made the complaints or to whom she made them, but in a ninety-seven page attachment, Plaintiff included some messages sent to other state employees in late December 2024 and extending through February 2025. (Attachment at 74–97, ECF No. 14-5.)

[3] At the closure of an administrative child protective investigation in Maine, a social worker or investigator reaches (1) an "unsubstantiated" finding if they determine that a person responsible for a child has not subjected the child to abuse or neglect; (2) a "substantiated finding" if they determine that a person responsible for the child has caused or is likely to cause "high severity" abuse or neglect; or (3) an "indicated finding" if they determine that a person responsible for the child has caused or is likely to cause "low or moderate severity" abuse or neglect. Maine DHHS Child and Family Services, Child Welfare Policy Manual § 2.8; *see also*, *Kane v. DHHS*, 2008 ME 185, ¶ 15, 960 A.2d 1196, 1200; *Cunha v. DHHS*, No. AP-08-039, 2010 WL 3218037 at 16–17 (Me. Super. Ct. July 20, 2010). Findings of abuse or neglect are recorded in a database; an "indicated" finding remains confidential and has few, if any, practical consequences without further proceedings, but a "substantiated" finding can itself have significant practical implications for some people, including because it can be disclosed to many employers. *Kane*, 2008 ME 185 ¶ 1; *Cunha*, 2010 WL 3218037 at 16–17.

## LEGAL STANDARD

28 U.S.C. § 1915 is designed to ensure meaningful access to the federal courts for individuals unable to pay the cost of bringing an action. When a party is proceeding without prepayment of fees, however, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under § 1915] are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A self-represented plaintiff is not exempt from this framework, but the court must construe his complaint 'liberally' and hold it 'to less stringent standards than formal pleadings drafted by lawyers.'" *Waterman v. White Interior Solutions*, No. 2:19-cv-00032-JDL, 2019 WL 5764661, at *2 (D. Me. Nov. 5, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "This is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim." *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980).

## DISCUSSION

Plaintiff alleges two Fourteenth Amendment claims and a First Amendment claim against DHHS and two of its employees. The constitutional claims against DHHS fail because the State of Maine and its agencies have sovereign immunity. State agencies are not considered persons under 42 U.S.C. § 1983, *Will v. Michigan Department of State Police,* 491 U.S. 58, 64 (1989), and under the doctrine of sovereign immunity exemplified by the Eleventh Amendment, states and state agencies may not be sued by citizens in federal court, regardless of the form of relief requested. *Poirier v. Mass. Department of Corrections*, 558 F.3d 92, 97 n.6 (1st Cir. 2009).

The Fourteenth Amendment prohibits state deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This protection has both substantive and procedural components. *Amsden v. Moran*, 904 F.2d 748, 753–54 (1st Cir. 1990). In either context, "a plaintiff, as a condition precedent to stating a valid claim, must exhibit a constitutionally protected interest in life, liberty, or property." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 8 (1st Cir. 2005).

The procedural component of the due process guarantee "normally requires notice and an opportunity for some kind of hearing," but "[w]hether the opportunity needs to be furnished before the seizure or whether a post-seizure opportunity is sufficient depends on the circumstances." *Herwins v. City of Revere*, 163 F.3d 15, 18 (1st Cir. 1998) (quotation marks omitted). The substantive component of the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests," *Troxel v. Granville*, 530 U.S. 57, 65 (2000), and prohibits

"executive action when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Espinoza v. Sabol*, 558 F.3d 83, 87 (1st Cir. 2009) (quotation omitted); *see also Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006) (conduct must be "extreme and egregious," "truly outrageous, uncivilized, and intolerable," "stunning").

The Supreme Court has recognized a fundamental right and liberty interest of parents to control the basic components of the custody and care of their minor children, *see Troxel*, 530 U.S. at 66; *Valdivieso Ortiz v. Burgos*, 807 F.2d 6, 7–8 (1st Cir. 1986), but Plaintiff did not allege a governmental deprivation or infringement of that fundamental right or interest. To the contrary, Plaintiff explains that she arranged for her brother to care for her children while she was in voluntary treatment; she explicitly asserts that Defendants never seized her children or initiated judicial proceedings to take temporary or permanent custody of her children; and she does not allege that Defendants imposed any other enforceable obligations regarding her parenting relationship.

Plaintiff evidently contends that Defendants encouraged or pressured her to take certain measures regarding her alcohol use, treatment, and temporary guardianship agreement when she references the possibility that DHHS might attempt to take custody of her children if she did not take those or similar actions. However, because further legal action in state court would be required for the agency to take custody of Plaintiff's children, the mere potential for a future deprivation is not itself a deprivation. *See Public Service Co. of New Hampshire v. West Newbury*, 835 F.2d 380, 385 (1st Cir. 1987) (mere threat of

future enforcement action, even in bad faith, does not constitute a deprivation, at least where the state courts are available to correct errors).

Plaintiff's other assertions of improper notice, procedural errors, and inadequate communication do not support a substantive due process or procedural due process claim. The alleged conduct cannot be viewed as "conscience shocking, in a constitutional sense" as is required for substantive due process violations more broadly. As to the procedural due process claim, because Plaintiff does not allege any ultimate adverse consequences (e.g., a loss of custody) that resulted from Defendants' alleged failure to respond or to send the letter to the correct address, and because Plaintiff's right to appeal from the administrative determination was not impacted by the mailing/notice error, Plaintiff has not alleged the deprivation of a legally recognized liberty or property interest that is causally related to Defendants' alleged mailing/notice error or their alleged failure to respond to Plaintiff's inquiries.

Plaintiff's procedural due process allegations against the DHHS employees also implicate the Supreme Court's reasoning in *Parratt v. Taylor*, 451 U.S. 527 (1981), *Hudson v. Palmer*, 468 U.S. 517 (1984), and *Zinermon v. Burch*, 494 U.S. 113 (1990). The so-called *Parratt-Hudson* doctrine provides:

> So long as a state has not set up a scheme so open-ended it invites unwarranted uses of summary process, *see Zinermon*, 494 U.S. at 138, and so long as a state provides an adequate after-the-fact remedy for any wrongful summary action, *see Parratt*, 451 U.S. at 543–44, allegations of the kind of "random and unauthorized" mistakes in application that those who work in

> government sometimes make are not enough to state a procedural due process claim, *Hudson*, 468 U.S. at 533.

*South Commons Condominium Association v. Charlie Arment Trucking, Inc.*, 775 F.3d 82, 89 (1st Cir. 2014) (alternate citations omitted). Plaintiff has not alleged an actionable procedural due process claim because (1) Plaintiff does not challenge the adequacy of the procedures provided by a state or local policy or rule, and (2) Plaintiff does not allege the absence of state remedies for the alleged violations, which remedies were evidently available. In fact, to the extent the short-lived substantiated finding could itself constitute a deprivation, Plaintiff successfully pursued an available administrative remedy and prevented any potential deprivation regarding the database of findings of abuse or neglect. Even if Plaintiff had not obtained the relief she sought, there were also state court remedies available to challenge the ultimate agency decision if it had not been reversed.

Plaintiff also asserts that the individuals named as defendants retaliated against her for the inquiries of and complaints to their superiors. To state a First Amendment retaliation claim, a plaintiff "must show that [the plaintiff] engaged in protected activity, that defendants took an adverse action against [the plaintiff] that would deter a [person] of ordinary firmness from continuing to engage in that conduct, and that there is a causal link between the protected activity and the adverse action." *Turner v. Wall*, No. 18-1869, 2020 WL 5543935, at *1 (1st Cir. May 5, 2020).

Plaintiff has arguably alleged facts that would support a finding that she engaged in protected conduct and that she suffered an adverse consequence—an administrative finding of neglect capable of itself imposing significant practical consequences. However, because

Plaintiff successfully appealed the finding, the finding did not take effect. More importantly, Plaintiff has not alleged sufficient facts to support a finding that she suffered the adverse consequence due to her complaints rather than for other reasons. Plaintiff does not allege any preexisting or other relationship or hostility between her and the DHHS employees, and Plaintiff does not allege that the investigation was baseless or opened without any suspicion or justification. The adverse finding followed close in time to the alleged complaints, but the investigation (and the associated distress by the subject of the investigation) was ongoing long before the complaints.

At its core, the second amended complaint alleges that (1) the employee defendants were assigned to investigate after the initial incident and a report of child neglect, (2) Plaintiff experienced distress and dissatisfaction during the course of the administrative investigation, (3) Plaintiff made complaints about the investigators, and (4) the investigators' conclusions at the termination of the investigation were unfavorable to her. The alleged First Amendment retaliation claim is too broad and generic to be plausible on its own. A party must assert more than a complaint about an investigator and an unfavorable result to satisfy the causation requirement. Otherwise, every person who is the subject of an investigation would be able to generate a retaliation claim by complaining about the investigator prior to the issuance of an adverse finding or ruling. In short, without more, "the Complaint does not 'support a fact-based inference' that the . . . Defendants' actions were anything other than routine actions undertaken by [government] officials in the exercise of their responsibilities." *Powell v. City of Pittsfield*, No. CV 18-30146-MGM, 2020 WL 7700123, at *10 (D. Mass. June 29, 2020) (assuming adverse consequences

followed protected speech but there was insufficient support to infer retaliatory motive) (quoting *Campagna v. Massachusetts Department of Environmental Protection*, 334 F.3d 150, 155 (1st Cir. 2003) and citing *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 36 (1st Cir. 2011)). Even if the adverse actions were ultimately erroneous, that is not enough to state a plausible retaliation claim in these circumstances. *See also, J.T.H. v. Missouri Department of Social Services Children's Division*, 39 F.4th 489, 491, 493 (8th Cir. 2022) (dismissing a similar (and far more plausible) retaliatory investigation claim following a reverse child protective finding because such retaliatory investigation claims are either unavailable or not established with sufficient particularity to defeat investigator's qualified immunity).

## CONCLUSION

After a review of Plaintiff's second amended complaint in accordance with 28 U.S.C. § 1915, because Plaintiff has not alleged sufficient facts to support an actionable claim, I recommend the Court dismiss the matter.

## NOTICE

> A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.
>
> Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 16th day of October, 2026.